E-FILED
Tuesday, 15 August, 2006  02:02:15 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| BRUCE L. PILLSBURY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 05-3139 |
| | ) | |
| TIMOTHY W. MARTIN, in his | ) | |
| Official Capacity as Secretary, | ) | |
| Illinois Department of Transportation | ) | |
| and Individually, and JULIE CURRY, | ) | |
| Individually, | ) | |
| | ) | |
| Defendants. | ) | |

OPINION

RICHARD MILLS, U.S. District Judge:

This case is before the Court on the Defendants' motion for summary

judgment.

At the end of the day, it is ALLOWED.

I. BACKGROUND

Plaintiff Bruce L. Pillsbury has asserted, pursuant to 42 U.S.C. § 1983,

an employment-related claim against Defendants Timothy W. Martin,

1

Secretary for the Illinois Department of Transportation ("IDOT") and Julie Curry, former Deputy Chief of Staff to Governor Rod Blagojevich.  The Plaintiff contends that his termination was for political reasons in violation of the First Amendment.  The Defendants allege that the Plaintiff is entitled to no relief because his former position is the kind of position for which politically-motivated personnel action is permitted.

A. Plaintiff's employment history at IDOT

Plaintiff Bruce L. Pillsbury was employed as a Technical Advisor IV (Position No. PW 954-23-55-000-00-01) in January 1995.  The Defendants allege that on November 16, 2002, the Technical Advisor IV position was reclassified under the previous Gubernatorial Administration by IDOT's Bureau of Personnel Management to a Technical Manager IV position (Position No. 414-23-55-000-00-02).  The Plaintiff denies any assertion or inference that an IDOT position description exists for that position.

The Defendants allege that although the position number for the Plaintiff's position changed pursuant to the reclassification order, the duties inherent in Plaintiff's position did not change and the June 1, 1995 position

description remained in effect for his Technical Manager IV position.  The Plaintiff disputes this assertion, in that he denies the position description for June 1, 1995 was reliable or accurate with respect to the Technical Manager IV, or for the previous Technical Advisor IV position.  On June 3, 2003, the Plaintiff was terminated from his Technical Manager IV position.

B. IDOT Position description

The Defendants allege that the IDOT Bureau of Personnel Management maintains official, written position descriptions for all technical employees, including Technical Managers.  The Plaintiff disputes that there exists any official written position description for a Technical Manager IV.  The Defendants contend that the November 16, 2002 Position Reclassification Form, which converted the Technical Advisor IV position to the Technical Manager IV position, is a true and correct copy of the official IDOT Position Reclassification Form contained in IDOT files. The Plaintiff admits that the November 16, 2002 Position Conversion Form is an authentic copy of documents retained by IDOT, but he again denies that any written position description exists for a Technical Manager IV.

3

3:05-cv-03139-RM-BGC  # 24  Page 4 of 51

The Defendants allege that the position description for position number PW 414-23-55-000-00-02 corresponding to the Technical Manager IV position is a true and correct copy of the IDOT Position Description contained in IDOT files in effect from June 1, 1995 to July 1, 2004. The Plaintiff denies that a position description is attached to the affidavit submitted by the Defendants in support of this assertion, and that a position description existed for the position. Next, the Defendants claim that the position description for position number PW 954-23-55-000-00-01 corresponding to the Technical Advisor IV position is a true and correct copy of the official IDOT Position Description contained in IDOT files in effect from January 16, 1995 to June 1, 1995. Moreover, the position description for position number PW 954-23-55-000-00-01 corresponding to the Technical Advisor IV position is a true and correct copy of the official IDOT Position Description contained in IDOT files in effect from April 1, 1993 to January 16, 1995. While admitting the position descriptions are authentic public records, the Plaintiff denies any inference that they are accurate or reliable position descriptions with respect to his position.

4

The Defendants allege that based upon the duties inherent in the Technical Manager IV position, as reflected in the June 1, 1995 position description–which was in effect at the time of the Plaintiff's termination–the determination was made by the Illinois Department of Central Management Services ("CMS") that his position would be classified as <u>Rutan</u>-exempt.[1] This determination is indicated on the form attached to the official, written IDOT Position Description.  The Plaintiff both partially admits and denies these allegations.  He admits that the exhibit attached to the affidavit submitted by the Defendants is an authentic copy of a written IDOT Position Review/Determination form.  The Plaintiff states that he denies the remaining allegations.  The Plaintiff claims that some of the Defendants' assertions constitute legal conclusions.  He denies that the duties of his job inherently rendered the position as <u>Rutan</u>-exempt.

The Defendants allege that as reflected in Exhibits 2, 3 and 4 of Karin Smith's affidavit, the duties inherent in the Technical Manager IV position have remained substantially the same since April 1, 1993.  The Plaintiff

---

[1] <u>Rutan v. Republican Party of Ill.</u>, 497 U.S. 62 (1990).

5

denies this allegation.  Next, the Defendants assert that the official personnel files for technical employees are maintained by the IDOT Bureau of Personnel Management or the district office and include, among other documents, employees' annual performance evaluations and official position descriptions.  The Plaintiff partially admits this allegation, in that he acknowledges that official personnel files for technical employees are maintained by the IDOT Bureau of Personnel Management or the district office and include employees' annual performance evaluations.  However, the Plaintiff disputes that the personnel file contained an official position description for Plaintiff's position.

The Defendants allege that if an employee believes the official IDOT Position Description is inaccurate, then under Section 10-4(C) of the official IDOT Personnel Policies Manual, he or she has the ability to request an audit of the position to determine the proper allocation of the duties in the position.  The Plaintiff admits the Defendants have submitted an authentic copy of the IDOT personnel policies manual but disputes as legal conclusions the rest of the allegations.  Next, the Defendants claim that

IDOT considers all such official, written position descriptions to be public documents under Illinois law which may be obtained by a request under the Illinois Freedom of Information Act.  The Plaintiff disputes this allegation on the basis that he does not know what IDOT may or may not consider to be official.

### C. Duties inherent in Plaintiff's former Technical Manager position

The Defendants allege that the duties inherent in the Plaintiff's former Technical Manager IV position, detailed in the official IDOT Position Description that was in effect at the time of his termination, were as follows:

1. Official position description for Pillsbury's Technical Manager IV Position in effect at the time of his termination

This position reports to the District Engineer as do the EEO and Labor Compliance Section Manager, the Bureau Chief of Administrative Services and Local Roads and Streets and the Engineers of Program Development, Project Implementation and Operations.

The environment of this position is characterized by extreme political sensitivity which complicates the task of developing and maintaining consistent and cooperative relations with local agencies.  This position must continually be aware of the sensitive relationship between the district and the remainder of the state.

The greatest challenge of this position is to provide timely assistance to local agencies in obtaining MFT funds for their use. Typical problems include maintaining status of transportation projects to keep the general public and state legislators apprised of progress.

This position personally serves as district spokesperson on the issue of allocation of Motor Fuel Tax (MFT) funds. The incumbent develops and maintains liaison functions with local agencies and municipalities to assist in understanding and maximizing additional funds as they become available as well as the development of transportation projects. S/He serves as liaison with county board members seeking information and assistance on the funding situation for their area, informs state legislators of the status of transportation projects in their areas, and performs other duties assigned by the District Engineer.

Under general supervision, the incumbent has latitude to accomplish responsibilities of the position. Matters of a unique nature are referred to the supervisor with recommendations for solution. This position is constrained by departmental rules and regulations.

Internal contact includes the Executive Office and Bureau of Local Roads and Streets personnel. External contacts include the mayors, regional planning commissions, local agencies, state legislators and the general public to ensure effective coordination and monitoring of transportation programs and projects.

The effectiveness of this position is measured by the degree to which the harmonious relationships between the state and local agencies are achieved and the degree to which limited available resources address the wide array of needs in District Five.

Principal Accountabilities

1.  Serves as district spokesperson on the allocation of MFT funds.

2.  Provides effective liaison between local agencies and the Department through assistance to local agencies in the development of transportation projects.

3.  Apprises state legislators of the status of transportation projects within their area of representation.

4.  Performs other duties as assigned by the District Engineer.

5.  Ensures compliance with departmental safety rules and regulations.

The Plaintiff disputes these allegations, stating that he denies the

Defendants' legal conclusions.

2. Duties inherent in Pillsbury's Technical Manager IV Position based on his signed 2002 IDOT performance review

The Defendants allege that on January 10, 2003, the Plaintiff signed

his IDOT performance review, and the relevant duties that he acknowledged

performing during 2002 were as follows:

Bruce helped coordinate the Adopt-a-Highway Program this past year. This included monitoring, training, planning, implementing, and coordinating all activities in District 5.

9

Bruce spoke to several groups on the program, helping enhance community awareness of the program.

Bruce also served as the District HAZMIN coordinator.  He was the District representative on the Product Review Committee in Central Operations.  He also coordinated training for District personnel on hazardous materials and right-to-know.

Enhance community awareness and support for the Adopt-A-Highway program by developing resources, public speaking, and direct contact with civic, social, church sponsored, charitable and other Not for Profit groups.

Provide effective liaison and intergovernmental cooperation between local agencies, State and local officials, and the general public to ensure effective coordination and monitoring of transportation programs and projects.

Serve as the District Representative on the Product Review Committee in Central Operations, reviewing the products used in our work and getting material safety data sheets entered into HAZMIN tracking system.

Coordinate hazardous materials and Right-To-Know training for district employees.

The Plaintiff admits in part and denies in part the foregoing allegations.  The Plaintiff acknowledges that on January 10, 2003, he executed page 2 of the Performance Management System, IDOT Performance Review, and acknowledged that he was in 2002 performing the

duties noted above in the first two paragraphs.  He denies the remaining allegations.

D. Plaintiff's additional material facts

The Plaintiff claims there are material facts in addition to those alleged by the Defendants which show that a genuine issue of material fact exists and that the Defendants' motion should, therefore, be denied.  He first alleges that in early 2003, IDOT determined that not all local agency liaison job descriptions were current or consistent.  The Department assumed all local agency liaisons performed the same duties based on title. The Defendants contend that the Plaintiff's assertion is not supported by evidentiary material, because the letter submitted by Plaintiff does not support the contention that the "Department assumed all local agency liaisons performed same duties based on title."  Moreover, the allegation is immaterial because although IDOT may have updated some job descriptions in 2003, the letter does not address whether the Plaintiff's job description was updated.[2]  Finally, according to the IDOT job description, the duties of

---

The letter from Theodore R. Schullian, IDOT's Assistant Chief Counsel, to counsel for the Plaintiff states in pertinent part: "All Local Agency Liaisons perform the same

the Technical Manager position have remained substantially unchanged since 1993.

Next, the Plaintiff alleges that his position as Technical Advisor IV was never determined to be exempt from <u>Rutan</u>. The Defendants say this allegation is immaterial, in that there is no requirement that a position must be subjectively and internally deemed <u>Rutan</u>-exempt by a government official prior to an employee's termination. The Plaintiff asserts that it was subsequent to the change in administrations and on or about April 14, 2003 that a position determination for the Technical Manager IV was first deemed to be exempt from <u>Rutan</u>. The Defendants claim this contention is immaterial for the same reason noted above. They note, moreover, that the duties for that position have remained substantially unchanged since

basic duties. However, earlier this year, the Department discovered that not all of the job descriptions were current or consistent. For this reason, the accurate job descriptions for all Local Agency Liaison positions throughout the Department were sent to CMS for determination as to whether or not the positions were exempt from the provisions of <u>Rutan</u>. CMS determined that each Local Agency Liaison position was exempt from the provisions of <u>Rutan</u>." Based on the foregoing, the Defendants are partially correct. They correctly note that the letter does not address whether the Plaintiff's job description was current or consistent. However, the letter explicitly states that all liaisons "perform the same basic duties." While this is not exactly the same thing as saying that "the Department assumed all local agency liaisons performed same duties based on title," the basis of the Defendants' objection is unclear.

1993.

The Plaintiff next alleges that the Position Review/Determination form setting forth the position determination on April 14, 2003, that the Technical Manager IV position was exempt from <u>Rutan</u> is not a complete document or, alternatively, no current job description was utilized when making the position determination.  The Plaintiff claims the form states that a "current job description must be attached to this document when submitting to CMS."  The Defendants contend that this alleged fact is not supported by evidentiary material because the unrefuted affidavit which they submitted indicates that the Position Review/Determination Forms are completed "based on the duties reflected in the official IDOT Position Description."  The Defendants further assert that the form does not control the Court's determination of whether the position is exempt from the protections of <u>Rutan</u>; instead, the Court must make a determination based on the duties inherent in the position.

Next, the Plaintiff alleges that the April 14, 2003 Position Determination and Non-Code Position Review Determination form was not

13

contained in his personnel file when it was requested subsequent to his termination.  The Defendants assert that this alleged fact is immaterial because the form does not control whether the position is <u>Rutan</u>-exempt. The Plaintiff next contends that none of the proffered job descriptions provide a specific description for the title of Technical Manager IV; Position No. PW 414-23-55-000-00-02.  The Defendants assert this alleged fact is not supported by evidentiary material; moreover, they dispute the "formalistic and flawed characterizations of the official IDOT Position Descriptions" that they submitted.

The Plaintiff alleges that no specific technical position description in accordance with Chapter 10, Classification and Salary Administration, is set forth in the IDOT Personnel Policies Manual.  The policy manual requires a specific job description for a technical position.  The Defendants dispute this allegation and contend that the official IDOT position description which they submitted is the official description for the Technical Manager IV position.

The Plaintiff's immediate supervisor was David Clark, who is a

14

District Engineer. The Plaintiff claims Clark did not know that any Position Review/Determination was requested or made with respect to Plaintiff's position. The Defendants contend this alleged additional fact is immaterial because Clark's alleged lack of knowledge of a Position Review/Determination for the Plaintiff's Technical Manager IV position is irrelevant to the issue of whether that position is one for which political affiliation is an "appropriate requirement." The Plaintiff further alleges that prior to the April 14, 2003 determination he was exempt from <u>Rutan</u>, there existed a statement of policy identifying those IDOT employees in District 5 exempt from <u>Rutan</u>. The Defendants deny this alleged fact, and deny that such a "statement of policy" existed. Assuming that such a "statement of policy" did exist, however, the Defendants assert this fact would be immaterial because the "statement of policy" would not control this Court's determination of whether the position is exempt from the protections of <u>Rutan</u>.

The Plaintiff next alleges that at no time subsequent to May 1, 2002 did the Bureau Chief of Personnel Management conduct any investigation,

audit or survey of the job duties which Plaintiff was authorized to perform in his position as Technical Manager IV, Position No. PW 414-23-55-000-00-02 in District 5.  The Defendants assert this alleged fact is immaterial because the Plaintiff could have requested a survey or audit into the allocation of his job duties during his employment if he believed the position description for his Technical Manager IV position to be inaccurate.

The Plaintiff alleges that if a position determination had been conducted in 2003, it would have established the following: (1) Plaintiff was not authorized to perform the job accountabilities set forth in the job descriptions relied upon by the Defendants; (2) Plaintiff had no duties with respect to the allocation of MFT funds; (3) Plaintiff had no supervisory authority over any other state employee, he had no budget or appropriation responsibilities, he had no authority to hire, fire, discipline, determine terms and conditions of employment, or bind IDOT in any contract; and (4) Plaintiff was never involved in the determination of policy while assigned duties as Technical Manager IV or Technical Advisor IV.  The Defendants dispute the Plaintiff's alleged facts pertaining to his job description and

claim these facts are not supported by evidentiary material.  The Defendants

assert, moreover,  that the unrefuted affidavit submitted in support of their

summary judgment motion provides the correct job description for the

Plaintiff's Technical Manager IV position.  They further note that the fact

that a particular occupant of a job did not perform all of the duties inherent

in a position is irrelevant.

## II. ANALYSIS

### A. Summary judgment standard

The entry of summary judgment is appropriate when the pleadings,

depositions, answers to interrogatories, and admissions on file, together with

any affidavits, show that there is no genuine issue of material fact and the

movant is entitled to judgment as a matter of law.  Fed. R. Civ. P 56(c);

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A "material fact" is a

fact which may affect the outcome of the litigation, given the substantive

law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  There is

a "genuine issue" of material fact when a reasonable juror could find that

the evidence supports a verdict for the non-moving party.  Id.  If a

defendant can show the absence of some fact that the plaintiff would have to prove at trial, then the plaintiff must produce evidence, and not merely restate his allegations, to show that a genuine issue exists. <u>Sartor v. Spherion Corp.</u>, 388 F.3d 275, 278 (7th Cir. 2004).

## B. Plaintiff's position and political affiliation

### (1)

In support of their summary judgment motion, the Defendants first contend that Seventh Circuit precedent and the decisions of this Court require that summary judgment be entered in their favor because the Plaintiff's former Technical Manager position included spokesperson, policymaking and policy-implementing responsibilities. Generally, public employees may not be made to suffer adverse job actions because of their political beliefs. <u>See</u> <u>Rutan v. Republican Party of Ill.</u>, 497 U.S. 62, 79 (1990); <u>Elrod v. Burns</u>, 427 U.S. 347, 362-63 (1976). An exception to the general rule exists if the employer can show that "party affiliation is an appropriate requirement for the effective performance of the public office involved." <u>Branti v. Finkel</u>, 445 U.S. 507, 517-18 (1980). The Defendants

18

allege, therefore, that pursuant to <u>Branti</u>, the Plaintiff is not entitled to relief because political affiliation is an "appropriate requirement" for the Technical Manager IV position.

The Seventh Circuit has formulated the key inquiry as follows: "The test is whether the position held by the individual authorizes, either directly or indirectly, meaningful input into government decision-making on issues where there is room for principled disagreement on goals or their implementation." <u>Nekolny v. Painter</u>, 653 F.2d 1164, 1170 (7th Cir. 1981).  Courts begin this analysis by "looking for policymaking powers or confidential relationships because those terms accurately describe the vast majority of offices that fall within the realm of legitimate patronage." <u>Thompson v. Illinois Dept. of Professional Regulation</u>, 300 F.3d 750, 756 (7th Cir. 2002) (citation omitted).  Positions are "confidential" when employees "are in close contact with policymakers and the highly confidential communications or records affecting decisions." <u>Meeks v. Grimes</u>, 779 F.2d 417, 420 (7th Cir. 1985).  Another consideration is "whether the employee acts as an advisor or formulates plans for the

19

implementation of broad goals." <u>Thompson</u>, 300 F.3d at 756 (quoting <u>Elrod</u>, 427 U.S. at 368).

In assessing whether political affiliation is an appropriate requirement for the duties of a position, courts focus on the "inherent powers of the office, not what any individual officeholder actually does." <u>Riley v. Blagojevich</u>, 425 F.3d 357, 360-61 (7th Cir. 2005) (internal quotations and citations omitted). Accordingly, the job description and powers of the office are what is important in making this determination. <u>Id.</u> The Defendants allege that United States District Judge Jeanne E. Scott recently dismissed what they claim are four almost identical patronage claims involving Technical Manager positions; the Court relied on official IDOT position descriptions to determine the Technical Manager positions were exempt under <u>Branti</u>. <u>See</u> <u>Berry v. Illinois Department of Transportation</u>, 333 F. Supp.2d 751 (C.D. Ill. 2004) (IDOT Technical Manager VI); <u>Moss v. Martin</u>, No. 04-3217 (C.D. Ill. May 16, 2005) (IDOT Technical Manager VI); <u>Soltau v. Martin</u>, No. 04-3216 (C.D. Ill. Mar. 28, 2005) (IDOT Technical Manager V); <u>Allen v. Martin</u>, No. 04-3089 (C.D. Ill. Mar. 15,

20

2005) (IDOT Technical Manager VIII).

"For the job description to be the pivot on which the case turns, inquiry must focus on how the description was created; how it is updated and thus kept realistic rather than being allowed to drift far from the actual duties of the position; in short, on how reliable, how authoritative, the description is." Riley, 425 F.3d at 361. The Defendants note that the Seventh Circuit observed that the description of one of the jobs in question in Riley "had not been changed materially since 1989," which was long before the current governor took office. Id. Accordingly, the defendants were entitled to rely on the description in order to make their employment decisions. Id. at 362.

The Defendants contend that the written IDOT position description for the Plaintiff's former Technical Manager IV position cannot reasonably be questioned because it is similar to the position description relied on by the Seventh Circuit in Riley, and it is precisely the same type of IDOT Position Description relied on by Judge Scott in Berry, Soltau, Allen and Moss. Moreover as in Riley, the Defendants have submitted an

authenticating affidavit regarding the validity of the position description in effect at the time of the Plaintiff's termination, in addition to earlier versions of the position description. The Defendants assert that if the Plaintiff believed the description was inaccurate or overstated in any way, he had under Section 10-4(C) of the official IDOT Personnel Policies Manual the ability to request "a survey, audit or other investigation . . . to determine the proper allocation of any position." The Defendants claim that the Plaintiff is unable to create a genuine issue of material fact on the issue of whether the essential duties of his position have been in place since 1993. Accordingly, they claim that the inherent duties of the Technical Manager IV position, upon which the <u>Branti</u> inquiry proceeds, are undisputed as a matter of law.

Based on the IDOT position description, the Defendants assert that a Technical Manager IV was required to (1) make actual policy; (2) execute policy with broad discretion; (3) provide "meaningful input" into other policymakers' decisions; and (4) serve as an IDOT spokesperson.

The Defendants note that according to the official IDOT position

22

description, the job duties of the Technical Manager IV include (1) developing and maintaining consistent and cooperative relations with local agencies and elected officials; (2) providing timely assistance to local agencies in obtaining Motor Fuel Tax ("MFT") Funds; and (3) the development of transportation projects. The Defendants claim that the Plaintiff has acknowledged that his job duties included: coordinating the Adopt-A-Highway Program; and providing effective liaison and intergovernmental cooperation between local agencies, elected officials, and the general public.

The Defendants reiterate that Judge Scott has determined that similar IDOT Technical Manager positions require policymaking duties and are exempt under <u>Branti</u>. In <u>Soltau</u>, Judge Scott determined, "The pleadings reveal that the [Technical Manager V] Position was a policymaking one with broad inherent responsibilities. The responsibilities included managing IDOT's metropolitan transportation planning program." <u>Soltau</u>, No. 04-3216, at 13. The Defendants claim this was similar to the Plaintiff's coordination of the Adopt-A-Highway program and related duties.

23

The Defendants note that in <u>Berry</u>, Judge Scott concluded that the Technical Manager VI was a policymaker because he had "wide discretion to allocate and reallocate resources throughout the district based on current needs and emergency situations." 333 F. Supp.2d at 758. Similarly, the Defendants claim that in this case, the Plaintiff provided "timely assistance to local agencies in obtaining MFT funds for their use," and developed and maintained "liaison functions with local agencies and municipalities to assist in understanding and maximizing additional funds as they become available as well as the development of transportation projects."

The Defendants further allege the Plaintiff's Technical Manager IV position involved the implementation of policy. They contend these duties involved his coordination of the Adopt-A-Highway program and the HAZMIN program and his service as the spokesperson and liaison for other transportation programs. The Defendants assert that the Plaintiff provided his supervisors with necessary information and recommendations on policy issues.

Next, the Defendants claim that the Plaintiff's Technical Manager IV

24

position required "meaningful input" into other policymakers' decisions. They note that in <u>Moss v. Martin</u>, No. 04-3217, at 14, Judge Scott found the Technical Manager VI position's "meaningful input in decision-making involves areas that are subject to principled disagreement based on partisan politics." Judge Scott observed, "The Position is charged with developing programs, policies, and procedures to improve safety and efficiency on the statewide highway system." <u>Moss</u>, No. 04-3217, at 15 (internal quotations omitted). Judge Scott noted that elections sometimes turned on a candidate's ability or inability to provide public services. <u>Id.</u> (citations omitted). The Defendants contend that the Plaintiff in this case–like the Technical Manager VI in <u>Moss</u>–was responsible for the coordination of IDOT programs and the provision of services to the general public which could potentially affect the fortunes of elected officials.

Finally, the Defendants contend the Plaintiff's position involved substantial spokesperson duties. They claim that he served "as district spokesperson on the allocation of MFT funds" and had regular contact with state legislators, mayors, and the general public to keep them apprised of the

25

status of the transportation projects in their area.  The Defendants note the Plaintiff has acknowledged that his responsibilities included: "Enhanc[ing] community awareness and support for the Adopt-A-Highway program by developing resources, public speaking, and direct contact with civic, social, church sponsored, charitable and other Not for Profit groups."  They allege those duties alone make the Technical Manager IV position exempt under the <u>Branti</u> exception.  <u>See</u> <u>Branti</u>, 445 U.S. at 518 ("[I]t is equally clear that the Governor of a State may appropriately believe that the official duties of various assistants who help him . . . communicate with the legislature cannot be performed effectively unless those persons share his political beliefs.").  The Defendants claim this is no different than other Technical Manager positions deemed exempt under <u>Branti</u> by Judge Scott.

(2)

The Plaintiff contends the alleged job descriptions do not entitle the Defendants to summary judgment.  He claims that because IDOT has admitted that the job description for his position was neither consistent nor current, there is a question of fact as to the reliability of any description.

26

The Plaintiff alleges that a specific IDOT position description for a Technical Manager IV–Position No. PW 414-23-55-000-00-02 does not exist.  He asserts the Defendants rely upon a document entitled "TA conversion" which purports to change the classification of his job duties.

The Plaintiff further claims that he requested his personnel file and a job description from IDOT for a Technical Manager IV.  He contends, however, that the documents the Defendants assert were public documents were not provided.  Moreover, the Plaintiff states that the existence of a Technical Manager IV description was denied.  The Plaintiff maintains, therefore, this is another basis to question the reliability and accuracy of the proffered job description.

Next, the Plaintiff alleges the proffered description is remote relative to the time of termination.  He claims he did not perform the duties set forth in the job description submitted by the Defendants.  The Plaintiff states that he had no responsibility for MFT funds.  Moreover, he was engaged in no activity indicative of political sensitivity.  The Plaintiff asserts his immediate supervisor establishes that the duties assigned to Plaintiff

27

were not related to those set forth in the claimed job description.

The Plaintiff further alleges the Defendants seem to claim that the title to the job, "local agency liaison," is conclusive.  Citing <u>Flenner v. Sheahan</u>, 107 F.3d 459, 464 (7th Cir. 1997), however, the Plaintiff claims that generalizations based on job title are contrary to the functional approach of <u>Branti</u> which focuses on the duties and responsibilities of a particular office.  The Plaintiff contends that a generalization was made regarding all "local agency liaison" employees of IDOT.  According to the Plaintiff, this generalization was made notwithstanding the actual determinations that the job descriptions were neither current nor consistent.

The Plaintiff further asserts IDOT conducted no audit, survey or investigation that made any inquiry of the Plaintiff's immediate supervisor in an attempt to ascertain an accurate job description.  He claims that the job description upon which IDOT relied in making the <u>Rutan</u>-exempt determination remains unknown.  According to the Plaintiff, there is no Technical Manager IV coded to his position number in existence.  The Plaintiff contends that because there was no investigation or audit of his job

28

and given that there was no current job description, the job description

upon which the Defendants rely does not resolve the issue.

Next, the Plaintiff claims his admitted duties are as follows:

(1) Coordinating the adopt-a-highway program in District 5.
This included monitoring, training, planning, implementing, and
coordinating all activities of District 5. Pillsbury spoke to
several groups on the program, helping enhance community
awareness of the program.

(2) Pillsbury served as the District HAZMIN coordinator. He
was the District Representative on the product Review
Committee in the Central Operations. He coordinated training
for District personnel on hazardous materials and right to know.

The Plaintiff notes the Defendants argue that, based on the 2002 IDOT

Performance Review, which was acknowledged by Plaintiff, his

responsibilities included "enhanc[ing] community awareness and support for

the adopt-a-highway program by developing resources, public speaking, and

direct contact with civic, social, church sponsored, charitable and other not-

for-profit groups."

The Plaintiff rejects the Defendants' assertion that this job activity

alone makes the Technical Manager IV position exempt under the Branti

exception. The Plaintiff contends this job description neither places him in

29

the position to communicate with the Legislature on behalf of the Governor, nor does it constitute communication with the public or media on issues of potential political concern.  He claims that his job is encouraging citizens to assist in cleaning garbage from roadsides, which is hardly a subject of extreme political sensitivity.[3]  The Plaintiff asserts this responsibility of speaking to lay and professional groups regarding various programs and answering correspondence from the general public could be considered as "merely professional or ministerial, rather than judgmental, policy-oriented, and politically sensitive."  See Riley, 425 F.3d at 363.

Next, the Plaintiff alleges that the HAZ-MAT and right-to-know duties are, at most, of a professional or ministerial type.  The Plaintiff notes that in Riley, 425 F.3d at 362-63, the Seventh Circuit observed that an individual who serves within a prison as chairman of a safety and sanitation committee who conducts routine and unscheduled safety, health, sanitation and security inspection tours, and provides recommendations as to any

---

[3]The Plaintiff's supervisor, David Clark, states that the Plaintiff's duties which pertained to the Adopt-A-Highway program "included promoting for adoption miles of highways to individuals, businesses or civic groups," though he did not have authority to assign or allocate miles of highways to adoptees."

30

changes, problems or improvements could be considered to be exercising duties that are merely professional or ministerial.

The Plaintiff claims the Defendants' reliance upon several of Judge Scott's decisions in support of the proposition that technical staff of IDOT is <u>Rutan</u>-exempt is misplaced.  He contends that scrutiny of the facts presented in those cases illustrates he was not within the class of policymakers subject to patronage dismissal.

The Plaintiff notes that in <u>Allen</u>, No. 04-3089, at 2-3, the plaintiff was a Technical Manager VIII acting as Bureau Chief of Accounting and Auditing.  According to the position description, Allen oversaw an operating budget of $2.5 million dollars and had five direct and 95 indirect subordinates.  <u>Id.</u> at 5-6.  The Court concluded that Allen was a policymaker because he had "considerable discretion in implementing broad IDOT goals," and had "meaningful input into government decision-making on issues where there was room for principled disagreement."  <u>Id.</u> at 12.  The Plaintiff claims Allen's position is not similar to his former Technical Manager IV position, which he says consisted of his recruitment of

31

volunteer citizens to retrieve garbage from roadsides.  The Plaintiff notes that he had no budget authority and no employees.  He contends, therefore, that his position does not compare to Allen's policymaking job.

The Plaintiff further notes that in <u>Moss</u>, No. 04-3217, at 7, the terminated employee was a Technical Manager VI, Chief of the Highway Sign Shop.  Moss supervised a staff of approximately 25.  He also had an operating budget of over $100 million dollars and was responsible for supervising a complete inventory, accounting, and budgetary system to administer a specific budget allocation for support of section activities.  <u>Id.</u> at 8.  Citing <u>Tomczak v. City of Chicago</u>, 765 F.2d 633, 641-42 (7th Cir. 1985), the Plaintiff contends that budgetary duties such as planning, developing and recommending budgetary requirements are not functions of a merely ministerial office holder.  He asserts, therefore, that the managerial and budgeting duties of the position held by Moss allowed for meaningful input into government decision-making.  The Plaintiff claims the same was not true of his position.

In <u>Soltau</u>, No. 04-3216, at 6, the terminated employee was a

Technical Manager V, Metropolitan Planning Manager with IDOT.  His responsibilities included managing IDOT's metropolitan transportation planning program.  Id. at 8.  Soltau was involved in directing the investment of planning funds to help local agencies compete for IDOT federal funds.  Id. at 13-14.  Moreover, he was responsible for resolving disputes among agencies competing for IDOT planning funds.  Id. at 14.

The Plaintiff notes that in Berry, 333 F. Supp.2d at 754, the terminated employee was a Technical Manager VI who supervised a staff of 40 employees and had a Bureau budget of approximately $4.3 million.  Id.  The accuracy of the job description was not challenged.  Id. at 758.

The Plaintiff alleges that the position he held neither directly nor indirectly provided meaningful input into governmental decision-making on issues of where there is room for principled disagreement on goals or their implementation.  He asserts the Defendants have failed to establish that his former position is exempt from the ban on patronage dismissal.  The Plaintiff contends, therefore, that the Defendants have failed to establish they are entitled to summary judgment.

33

(3)

In their reply brief, the Defendants allege they have demonstrated that political affiliation is an "appropriate requirement" for the position under Branti.  The Defendants claim the Plaintiff is unable to challenge either the authenticity of the official IDOT position description or the Court's ability to consider the position description in ruling on this motion for summary judgment.  Moreover, the Defendants assert the Plaintiff does not dispute that the position description is authentic, but mistakenly contends–without providing any evidentiary support–that it does not apply to his former Technical Manager IV position.

The Defendants further allege the Plaintiff makes no effort to dispute that, if the official IDOT Position Description accurately reflects the duties inherent in the position, then political affiliation is an "appropriate requirement" for it.  They claim that on its face, the position description contains express duties requiring the making and implementing of policy and acting as a spokesperson.  The Defendants contend the Plaintiff attempts to avoid summary judgment by (1) arguing that the position

34

description does not apply to his Technical Manager IV position; and (2) submitting two affidavits stating that, when he personally held the position, the duties he was called on to perform were limited in certain ways.  The Defendants assert, therefore, the Plaintiff's response is without merit, and that they are entitled to summary judgment for five reasons.

The <u>first</u> reason proffered by the Defendants is that the Plaintiff's "meritless and formalistic argument" that there is no position description for a Technical Manager IV is defeated by the official IDOT conversion form—which the Plaintiff concedes is authentic—and the unrefuted affidavit of Karin Smith, who attests that the official position description attached as Exhibit 2 to her affidavit "is a true and correct copy of the official IDOT Position Description contained in IDOT files for the position number PW 414-23-55-000-00-02, corresponding to the Technical Manager IV position (working title "Local Agency Liaison"), which was in effect for the time period of June 1, 1995 to July 1, 2004."  The Defendants allege the Plaintiff's argument is based entirely on the fact that the position number is not printed on the face of the position description.  They claim, however,

the Plaintiff acknowledges that the Technical Advisor IV position (with the PW 954-23-55-000-00-01 position number) was converted to the Technical Manager IV position, that the Conversion Form executing the conversion is authentic, and that the earlier versions of the position description for the Technical Advisor IV position are authentic public documents.

The Defendants' <u>second</u> claim is that they are entitled to summary judgment because the assertions of the Plaintiff and his former supervisor in their respective affidavits about the duties Plaintiff personally performed when he was a Technical Manager IV are irrelevant as a matter of law.  They allege they have demonstrated that the <u>Branti</u> test turns on the assessment of the duties "inherent in" an office, and assertions that a particular occupant of an office did not perform all of those duties are irrelevant. Rather, the Defendants maintain the official IDOT position description determines the duties "inherent in" the Plaintiff's former position. Moreover, the Seventh Circuit recently rejected the Plaintiff's argument when it stated "[t]he idea that job performance (rather than job description) should control the <u>Elrod-Branti</u> analysis has been consistently rejected by

36

this court and others." <u>Riley</u>, 425 F.3d at 361 (citation omitted). The Defendants contend, moreover, that neither the Plaintiff nor his former supervisor even contend that the assertions in their affidavits describe the duties "inherent in" the positions; rather, they merely discuss the duties the Plaintiff actually performed.

<u>Third</u>, the Defendants contend that the Plaintiff's attempt to challenge the accuracy of the position description must fail because he has conceded that earlier versions of the description, which date back to 1993, are authentic. They assert the Plaintiff misconstrues a letter from IDOT in support of his argument that "[t]he Department admits that the job descriptions for the position allegedly held by Pillsbury [were neither] consistent nor current." The Defendants claim, however, that the letter merely makes a general statement that "not all of the job descriptions were current or consistent," but it never specifically addresses the position description for Plaintiff's position. The Defendants allege that the earlier versions of the position description demonstrate that since 1993, the duties inherent in the Plaintiff's position have remained substantially the same

37

while IDOT issued updated versions of the description.  Moreover, the Plaintiff acknowledges he had the right under the IDOT Personnel Policies Manual to request an audit of position description, but he did not do so. The Defendants note that in <u>Riley</u>, 425 F.3d at 361, the Seventh Circuit acknowledged that these types of checks and balances ensure the accuracy of position descriptions, and that a <u>Branti</u> inquiry "presents a question of law informed solely by the job description and the powers of office."

The <u>fourth</u> reason provided by the Defendants as to why they are entitled to summary judgment is that the Plaintiff has failed to distinguish the four earlier cases in which Judge Scott held, as a matter of law, that the Technical Manager position is exempt under <u>Branti</u>.  The Defendants allege that in attempting to distinguish these cases, the Plaintiff "improperly argues" he only performed certain ministerial tasks and "conveniently ignores" the duties outlined by the official IDOT Position Description.  The Defendants contend, however, that after applying the proper standard and considering the duties inherent in the position–as outlined in the official IDOT Position Description–it is clear that political affiliation is an

38

"appropriate requirement" for the Plaintiff's former position because the position description lists the same types of duties noted by Judge Scott in the four earlier cases.

More specifically, the Defendants allege the Plaintiff's attempt to distinguish his position from the Technical Manager V in <u>Soltau</u>–by noting that Soltau's responsibilities included managing IDOT's metropolitan and transportation program and "directing the investment of planning funds to help local agencies compete for Federal funds"–fails because his former position contains nearly identical duties. The Defendants point to the Plaintiff's role in coordinating the adopt-a-highway program and in assisting local agencies on obtaining MFT funds for their use. The Defendants further claim that the Plaintiff does not mention his spokesperson duties, which they maintain are almost identical to those of the plaintiff in <u>Berry</u>, 333 F. Supp.2d at 758. For these reasons, the Defendants allege the Plaintiff's undisputed spokesperson and liaison duties alone bring the Technical Manager IV position within the <u>Branti</u> exception.

The <u>fifth</u> reason the Defendants advance as to why they are entitled

39

to summary judgment is that, even if the Court did not consider the official IDOT Position Description, the Plaintiff's response acknowledges that he performed substantial policymaking, policy-implementing and spokesperson duties which bring him within the Branti exception. These duties included "coordinating the Adopt-A-Highway program in the planning, implementation, coordination, contracting, training, contract monitoring and contract compliance," and providing "effective liaison and intergovernmental cooperation between local agencies, State and local officials, and the general public."

(4)

After the briefing on their motion for summary judgment was complete, the Defendants were granted leave to cite additional authority in support of their motion. The Defendants contend their argument that they are entitled to summary judgment is bolstered by the recent decisions in Pierson v. Blagojevich, 437 F.3d 587 (7th Cir. 2006), Steigmann v. Blagojevich, 406 F. Supp.2d 975 (N.D. Ill. 2005) and Judge Scott's decision in Utley v. Monk, No. 05-3017, 2005 WL 3478844 (C.D. Ill. Dec. 20,

2005). Each of these decisions applied the Seventh Circuit's holding in Riley.

The Plaintiff claims the additional authority relied on by the Defendants is of limited value because those cases say nothing new about political patronage cases. In Steigmann, 406 F. Supp.2d at 984-85, for example, Judge St. Eve noted the importance of the job description in determining whether political affiliation was a legitimate requirement. The Northern District observed that the Seventh Circuit had explained:

> It seems to us that if no basis is presented for thinking the official job descriptions systemically unreliable in a sense to be explained, the elected officials can rely on them, even if a plaintiff is prepared to testify (self-servingly) that the job description doesn't actually describe what he does, thus precipitating a factual inquiry likely to be protracted and inconclusive.

Id. at 984 (quoting Riley, 425 F.3d at 360).

The Plaintiff alleges that in the supplemental cases cited by the Defendants, the reliability of the job descriptions is either not disputed or is not addressed. In the case sub judice, however, the Plaintiff claims there is a dispute as to the reliability of the job description. Accordingly, he

41

contends the additional authority advanced by the Defendants does not compel granting their summary judgment motion. After reviewing the additional authority submitted by the Defendants, the Court agrees that the supplemental cases are of limited assistance, given that the courts which decided those cases simply applied the holdings of previous cases to the facts. In deciding the supplemental cases, the courts said little that was new about political patronage cases.

(5)

After viewing the evidence in the light most favorable to the Plaintiff, the Court concludes that although this case may be closer than some of the other patronage cases cited by the parties, political affiliation is an "appropriate requirement" for the Plaintiff's Technical Manager IV position. The Plaintiff acknowledged the duties he performed in 2002 when he signed his performance review on January 10, 2003. A summary of his actual achievements included:

> Bruce helped coordinate the Adopt-a-Highway Program this past year. This included monitoring, training, planning, implementing, and coordinating all activities in District 5. Bruce spoke to several groups on the program, helping enhance

community awareness of the program.  This enables District 5 to be one of the top programs in the State.

Bruce also helped serve as the District HAZMIN coordinator. He was the District representative on the Product Review Committee in Central Operations.  He also coordinated training for the District personnel on hazardous materials and right-to-know.

Weekly reports and MMI entries were all done properly and in a timely fashion.

The performance review also indicated the following duties, as noted by the Plaintiff's supervisor[4]:

Enhance community awareness and support for the Adopt-A-Highway program by developing resources, public speaking, and direct contact with civic, social, church sponsored, charitable and other Not for Profit groups.

Provide effective liaison and intergovernmental cooperation between local agencies, State and local officials, and the general public to ensure effective coordination and monitoring of transportation programs and projects.

_____

[4]The Plaintiff's supervisor, David Clark, states that he prepared this portion of the performance review after it was executed by the Plaintiff.  Significantly however, the Plaintiff does not specifically deny that he did in fact perform these duties.  He simply "denies that the balance of above provisions were on the IDOT Performance Review at the time he executed the same."  Moreover, it is unclear why Clark would have written those duties under the Plaintiff's name, and under the dates "6/1/02 – 12/31/02," unless the Plaintiff was in fact performing those duties between June 1, 2002 and December 31, 2002.

43

Serve as the District representative on the Product Review Committee in Central Operations, reviewing the products used in our work and getting material safety data sheets entered into HAZMIN tracking system.

Coordinate hazardous materials and Right-To-Know training for district employees.

The Plaintiff and his supervisor David Clark, the District Engineer, both state that Plaintiff had no responsibilities for budget or appropriation. More specifically, Clark says that the Plaintiff "had no duties with respect to the allocation of MFT funds." The Court also notes there is no reference in the Plaintiff's 2002 IDOT Performance Review regarding his authority to allocate MFT funds. Although a plaintiff may not create a factual dispute by testifying in a self-serving manner that a job description does not actually describe what he does, see Riley, 425 F.3d at 360, the Plaintiff has presented more than mere self-serving testimony on this issue. Accordingly, the Court concludes the Plaintiff has created a factual dispute on the issue of whether his duties involved the allocation of MFT funds.

Another factor which the Plaintiff alleges supports his argument that he was not a policymaker is his assertion that he did not have supervisory

44

authority over any other state employee.  This assertion is supported by the affidavits of the Plaintiff and Clark.  While the Court accepts the Plaintiff's allegation of a lack of supervisory authority as true for the purposes of the Defendants' summary judgment motion, it is of limited value to his argument that he was not a policymaker.  See Fuerst v. Clarke, __ F.3d __, 2006 WL 2074818, at *1 (7th Cir. July 28, 2006) (noting that in determining whether the job of sergeant in a sheriff's department is a policymaking job, the court "must not confuse the making or advising on matters of policy with either discretion or supervision.").  The court in Fuerst went on to conclude that sergeants "have modest supervisory authority and exercise a broader discretion than the deputy sheriffs . . . but they do not formulate departmental policy."  2006 WL 2074818, at *2.  The Court concludes, therefore, that the Plaintiff's lack of supervisory authority over any other employee is not particularly relevant to his argument that he was not a policymaker.

The Court further notes that even if the Plaintiff's lack of supervisory authority over other employees was significant in the overall analysis, that

45

factor might well be offset by others, such as the amount of influence and control Plaintiff had over the Adopt-A-Highway program. The Plaintiff's supervisor stated, "This fall the entire Adopt-a-Highway program was carried by Bruce due to illness and retirement by others in the area." The record establishes that not only did the Plaintiff coordinate all activities in the district, he also enhanced support for the program by speaking to various groups. These duties, in addition to his role as District HAZMIN coordinator, are perhaps more significant in the policymaking analysis than the fact that the Plaintiff did not supervise other employees.

Although stated in very general terms, the duties that are described on the Plaintiff's 2002 IDOT Performance Review appear to be consistent with the duties noted by Plaintiff and Clark in their affidavits. The duties are also consistent with the various job descriptions for the Plaintiff's positions. The Court concludes there is little question that some of these duties support the Defendants' argument that the Plaintiff's position was a policymaking one.

The Plaintiff's coordination of the Adopt-A-Highway program, which

according to the performance review included monitoring, training, planning, implementing and coordinating all activities, is consistent with the duties of a policymaking official.   These duties also included enhancing community awareness and support for the Adopt-A-Highway program.  He did this by developing resources, public speaking and direct contact with various groups.

Another part of the Plaintiff's job which supports the Defendants' argument that he was a policymaker involved his contact with elected officials and the general public.  The Plaintiff admits that he provided effective liaison and intergovernmental cooperation between local agencies, state and local officials and the general public.  This was done in order to ensure the effective coordination and monitoring of transportation programs and projects.  While these duties which are noted by Clark in the Plaintiff's performance review are somewhat vague and lacking in specificity, this may be an indirect way of saying:

> Internal contact includes the Executive Office and Bureau of Local Roads and Streets personnel.  External contacts include the mayors, regional planning commissions, local agencies, state legislators and the general public to ensure effective

47

coordination and monitoring of transportation programs and projects.

According to the various position descriptions submitted by the Defendants, the above description has been a part of the nature and scope of the Plaintiff's position throughout his tenure at IDOT.  Based on the close contact and working relationships with individuals who undisputedly are policymakers, the description noted above sounds much more like that of a policymaker than does the very general description found in the Plaintiff's performance review.  A plaintiff should not be able to create a factual dispute by simply de-emphasizing certain aspects of his job.

The following statement has also consistently been a part of the nature and scope of the job description:

The effectiveness of this position is measured by the degree to which harmonious relationships between the state and local agencies are achieved and the degree to which limited available resources address the wide array of needs in District Five.

The above statement demonstrates the potential political sensitivity of the position, in that it notes the success of a Technical Manager IV depends in large part on how well the principal actors (including approximately 175

local agencies) work together throughout the twelve counties of District 5. This further supports the Defendants' argument that a Technical Manager IV is a policymaker.

While the Plaintiff disputes some of the duties noted in his job description, the duties inherent in the Technical Manager IV position have not changed significantly since April 1993, according to the affidavit of Karin H. Smith, the Organizational and Classification Manager in IDOT's Bureau of Personnel, and the job descriptions submitted by the Defendants. The Defendants consistently note, moreover, that if an employee believes the official IDOT Position Description is inaccurate, then under Section 10-4(C)[5] of the official IDOT Personnel Policies Manual, he or she has the ability to request an audit of the position to determine its proper allocation of duties.  An audit was never requested by the Plaintiff or anyone else authorized to do so.

---

[5]Section 10-4(C) provides, "At the discretion of the Bureau Chief of Personnel Management or written request of a director, district engineer, central bureau chief, or an employee, a survey, audit or such other investigation as may be deemed necessary shall be made to determine the proper allocation of any position.  In the case of an individual employee, the employee may submit a request directly to the Bureau Chief of Personnel Management."

The Court concludes that, although there is a factual dispute regarding a Technical Manager IV's role in the allocation of MFT funds, the relevant job duties stated in the position descriptions show that the Plaintiff's duties included the development and implementation of policy, in addition to policy-oriented duties such as serving as a spokesperson and as a liaison with the community, elected officials and various agencies.  This is especially apparent when the Plaintiff's job descriptions are read in conjunction with his IDOT Performance Review from early 2003.  Based on the inherent powers of his position, the Plaintiff clearly had meaningful input into official decision-making.  Accordingly, the Court concludes that political affiliation is an "appropriate requirement" for the Plaintiff's former Technical Manager IV position.  As such, the position is exempt from First Amendment protection under Branti, and the Defendants are entitled to summary judgment on the Plaintiff's official capacity claims against Martin and his individual capacity claims against Martin and Curry.

## III. CONCLUSION

Having concluded that the Technical Manager IV position is exempt

50

under <u>Branti</u> and that the Defendants are therefore entitled to summary judgment, the Court need not address the additional reasons they have advanced in support of their motion for summary judgment.[6]

<u>Ergo</u>, the Defendants' motion for summary judgment [d/e 15] is ALLOWED.  Any pending motions are DENIED AS MOOT.  The Clerk will enter judgment in favor of the Defendants and against the Plaintiff. IT IS SO ORDERED.

ENTER:  August 14, 2006

FOR THE COURT:

s/Richard Mills
United States District Judge

---

[6]Nonetheless, it is worth noting that the Defendants would likely be entitled to qualified immunity as to the individual capacity claims.  The Plaintiff does little more than argue it is clearly established that an employee who performs primarily ministerial functions is not subject to patronage dismissal.  However, the record establishes that the Plaintiff's duties were not merely primarily ministerial.  Moreover, contrary to the Plaintiff's argument, the facts do not establish that the Plaintiff's position was neither current nor consistent.  At most, the facts establish there is a factual issue as to whether some of the job descriptions were consistent or current.

51